1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VENESSA M. SIMS, | Case No.: 13-CV-01755-LHK |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | |
| Defendant. | |

Plaintiff Venessa M. Sims ("Sims") appeals a final decision of the Commissioner of Social Security denying Sims' application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Nos. 21, 24. Upon consideration of the briefing[1] and for the reasons set forth below, the Court DENIES Sims' motion and GRANTS the Commissioner's motion.

**I.      BACKGROUND**

Sims was born on May 31, 1969. AR 49. She obtained a two-year associates degree in business administration in the mid-1990s. AR 132-33. She has past work experience as a receptionist, childcare worker, accounting clerk, and general office clerk. AR 23.

---

[1] This matter was submitted without oral argument pursuant to Civil Local Rule 16–5.

1

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On March 24, 2009, Sims filed a Title II application for a period of disability and disability insurance benefits under the Social Security Act. AR 151. She also filed a Title XVI application for supplemental security income on March 31, 2009. AR 151. In both claims, Sims alleged disability beginning on August 30, 2007. AR 151. Specifically, Sims alleged that she suffered from shoulder injuries resulting from a fall at work and depression. AR 298. These claims were initially denied on July 3, 2009, and again upon reconsideration on November 18, 2009. AR 151. Sims then filed a written request for a hearing on January 14, 2010. AR 151. This request was granted, and Sims appeared and testified at a hearing before an ALJ on July 16, 2010, in San Jose. Sims' claims were denied by the ALJ on October 28, 2010, because the ALJ determined that Sims was capable of performing past relevant work as a receptionist. AR 13**.**

On January 19, 2012, the Appeals Council vacated and remanded the ALJ's decision. AR 13. In its remand order, the Appeals Council directed the ALJ to: (1) further evaluate Sims' depression; (2) give further consideration to Sims' maximum residual functional capacity ("RFC") and provide appropriate rationale with specific references to evidence in the record in support of the assessed limitations; (3) determine Sims' RFC absent consideration of the limiting effects caused by Sims' substance abuse if the ALJ concluded that Sims is disabled but that substance abuse is a contributing factor material to the issue of disability; and (4) obtain evidence from a vocational expert to clarify the effect of the assessed limitations on Sims' ability to work. AR 13.

On remand, Sims appeared and testified at a hearing before the ALJ on March 19, 2012, in San Jose. AR 13. Lorian I. Hyatt, an impartial vocational expert, also appeared at the hearing. AR 13. Dr. Ulrich B. Jacobson, an impartial medical expert, testified at the hearing via telephone. AR 13. On May 12, 2012, the ALJ issued a written decision concluding that Sims was not disabled because Sims is capable of performing past relevant work as a receptionist, accounting clerk, and general office clerk and is therefore not entitled to benefits. AR 13-25.

In making her finding, the ALJ determined that Sims had not performed substantial gainful activity for portions of the period during which Sims alleged that she was disabled. The ALJ further found that Sims suffered from various severe ailments stemming from left shoulder and left

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

knee injuries, and that Sims' impairments did not meet or medically equal an impairment on the

Social Security Administration's list of medical conditions that automatically confer disability

status. AR 16-17. The ALJ also determined that Sims' depression caused only minimal limitations

in Sims' ability to perform basic activities and thus was not severe. AR 17.

The ALJ then determined that Sims had the RFC to perform light work with the following

restrictions: "the claimant is limited in her ability to push and pull overhead. She can reach

overhead above the shoulders with the left upper extremity on no more than an occasional basis.

The claimant must alternate positions between sitting and standing every 20 minutes, but can still

perform work both sitting and standing." AR 18. In light of this RFC finding, the ALJ concluded

that Sims was capable of performing past relevant work as a receptionist, accounting clerk, and

general office clerk. AR 18. In making the RFC finding, the ALJ relied on Sims' self-reported

symptoms, the objective medical evidence from the record, and the testimony of the vocational

expert. AR 17. The Court reviews this evidence in turn.

First, the ALJ considered all of Sims' self-reported "symptoms and the extent to which

these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence." AR 18. The ALJ determined that portions of Sims' personal testimony regarding

the severity of her symptoms were not credible due to various inconsistencies in the record. AR 19.

Specifically, the ALJ noted that Sims testified in hearings and in written statements that Sims' left

shoulder injury and depression prevent her from sustaining gainful employment, completing

activities of daily living, and engaging in normal social functioning. AR 19. The ALJ contrasted

these alleged symptoms with Sims' reported activities of daily living, which included acting as the

primary caregiver for her minor son and dog, preparing basic meals, light housekeeping, laundering

clothes, and shopping for groceries. AR 19. Next, the ALJ noted that Sims' alleged limitations and

subjective complaints were not fully persuasive in light of Sims' medical records, which, in the

aggregate, corroborated one another and were consistent with the ALJ's ultimate RFC finding. AR

22. Throughout the record, many of Sims' doctors, including Sims' examining physician Dr.

Stephen Mann and orthopedic surgeon Dr. Samir Sharma, opined that Sims was able to return to

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    work with only minimal limitations. AR 427, 598. As such, the ALJ determined that Sims'

2    testimony concerning the intensity, persistence, and limiting effects of her symptoms were not

3    credible to the extent such testimony was inconsistent with the ALJ's RFC finding. AR 19.

4         Second, the ALJ considered all of the medical evidence submitted as part of the record. AR

5    19. The ALJ considered records from Kaiser Permanente from September 7, 2004 through July 6,

6    2007 that provided documentation of treatment of Sims' left shoulder injury, chronic lower back

7    pain, and depression. AR 20. Sims' records note that she was released to modified work duty as of

8    May 24, 2006, with restrictions on lifting more than ten pounds, repetitive bending and stooping,

9    and overhead activities. AR 553.

10        The ALJ also considered records from four physicians: Drs. Mann, Sharma, Tran, and

11   Afroz. The Court addresses each in turn. Dr. Mann, who examined Sims both in 2007 and 2009

12   confirmed the presence of shoulder injury and depression and recommended on October 8, 2007

13   that Sims see an orthopedist. AR 20. On October 8, 2009, Dr. Mann noted Sims' "persistent high

14   level of pain is more representative of her psychiatric problems than any injuries that occurred" and

15   opined that Sims' only work restriction would be limited use of her left arm above shoulder. AR

16   598.

17        The ALJ also considered records from orthopedic surgeon Dr. Sharma, who treated Sims

18   for the shoulder injury from January 22, 2008 to October 2009. AR 20. On February 15, 2008, Dr.

19   Sharma ordered an MRI of Sims' left shoulder that revealed swelling in the left shoulder. AR 20.

20   On July 7, 2008, Dr. Sharma preformed arthroscopic surgery in Sims' left shoulder. AR 20. Dr.

21   Sharma recommended that Sims participate in twelve post-operation sessions of physical therapy.

22   AR 462. Sims participated in six sessions. AR 459. Sims' physical therapist noted that Sims was

23   "unable to come to therapy" due to "to personal business" and had "shown slow improvement" due

24   to "her low threshold for pain." AR 459. Sims continued regular follow-up visits with Dr. Sharma

25   through October 2009. AR 426. On April 21, 2009, Dr. Sharma noted that Sims had recently fallen

26   again on her left shoulder. AR 430. On June 2, 2009, Dr. Sharma also noted that Sims was

27   involved in a motor vehicle accident, which exacerbated the shoulder injury. AR 428. Throughout

28

**United States District Court**
For the Northern District of California

4

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1    Dr. Sharma's reports, including those following both the second fall and the motor vehicle

2    accident, Dr. Sharma noted that Sims could return to modified work that "should include no

3    overhead lifting and no lifting greater than 15 pounds using her left arm due to her shoulder

4    injury." AR 465.

5          The ALJ also considered records from internist Dr. Thang Tran, who treated Sims for

6    chronic knee pain from April 29, 2008 to February 14, 2012. AR 20. In these records, Dr. Tran

7    noted that Sims underwent arthroscopic left knee surgery on November 5, 2009. AR 20.

8          Finally, the ALJ considered records from psychiatrist Dr. Syed Afroz. AR 20. On March 1,

9    2012, Dr. Afroz submitted a medical statement, in which Dr. Afroz confirmed that Sims suffered

10   from depression, anxiety, hallucinations, and problems interacting in public but observed that

11   Sims' symptoms were in remission and that Sims had no more than mild limitations relative to

12   various work-related mental functions. AR 20-21.

13         Third, the ALJ considered testimony from the vocational expert. AR 23. The vocational

14   expert testified about a hypothetical worker with Sims' same age, education, and work experience,

15   "who can lift 10 pounds frequently, 20 pounds occasionally; who must physically alternate

16   positions every 20 minutes from sit to stand but can still preform work both sitting and standing;

17   [who] would only have occasional left overhead reaching." AR 136. The vocational expert opined

18   that such a worker would be able to work as an "accounting clerk . . . a general office clerk . . .

19   [and] a receptionist." AR 136.

20         Based on the testimony of the vocational expert and the objective medical evidence, the

21   ALJ determined that Sims is able to perform past relevant work as an accounting clerk, a general

22   office clerk, and a receptionist and is therefore not disabled. AR 23. The Appeals Council denied

23   review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Sims now

24   seeks judicial review of the denial of benefits.

25   **II.    LEGAL STANDARD**

26         **A.    Standard of Review**

27         This Court has the authority to review the Commissioner's decision to deny benefits. 42

28
                                                    5

U.S.C. § 405(g). The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

### B.    Standard for Determining Disability

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

"ALJs are to apply a five-step sequential review process in determining whether a claimant qualifies as disabled." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled; if not, the analysis proceeds to step two. *Id.* At step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled; if so, the analysis proceeds to step three. *Id.* At step three, the ALJ determines whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. § 404, subpt. P, app. 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is disabled; if not, the analysis proceeds to step

6

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

four. *Id.* At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to do his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled; if not, the analysis proceeds to step five. *Id.* At step five, the ALJ determines whether the claimant can do other jobs in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled; if not, the claimant is disabled. *Id.* "The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five." *Bray*, 554 F.3d at 1222.

**III.   DISCUSSION**

Sims challenges the ALJ's step four determination that Sims is able to perform past relevant work as an accounting clerk, a general office clerk, and a receptionist and is therefore not disabled. Sims contends that the ALJ erred in two ways. First, Sims alleges that the ALJ failed to give sufficient weight to Sims' statements concerning the intensity, persistence, and limiting effects of her symptoms. Second, Sims alleges that the ALJ failed to reconcile the differences between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"), which lists the physical requirements of various job titles. The Court addresses each of Sims' contentions in turn.

**A.   Credibility Determination**

Sims' first contention is that the ALJ improperly rejected Sims' subjective complaints regarding her functional limitations. Sims argues that the ALJ erred by relying on insubstantial evidence in making this credibility determination.

"In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. At this stage, the claimant need only show that her impairment "could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). If the claimant produces enough evidence to fulfill the first step of the analysis, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281. "General

7

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

8

9

10

11

12

13

14

15

16

17

In this case, at the first step of the credibility analysis, the ALJ determined that Sims had produced enough evidence to verify Sims' medically determinable impairments discussed above, which could reasonably be expected to cause some of Sims' alleged symptoms. AR 19; *see Lingenfelter*, 504 F.3d at 1035-36. At the second step, the ALJ found Sims' testimony regarding the severity of her symptoms not credible because this testimony conflicted with the record in two ways: (1) Sims' testimony conflicted with her self-reported daily activities and (2) Sims' testimony regarding her functional limitations conflicted with her medical records as whole. AR 19, 22. Substantial evidence in the record supports the ALJ's conclusion that Sims' testimony that Sims was unable to sustain gainful employment, complete activities of daily living, and engage in normal social functioning was not entirely credible.

18

19

20

21

22

23

24

25

26

27

First, Sims reported that symptoms associated with her medically determinable impairments have caused significant limitations on her ability to sustain gainful employment, complete activities of daily living, and engage in normal social functioning. AR 19. However, the ALJ noted that Sims' subjective complaints were "contradicted by evidence in the record that the claimant acts as the primary caregiver for her minor son and dog" and "that [Sims] can perform a wide range of activities of daily living, such as preparing basic meals, light housekeeping, laundering clothes, and shopping for groceries." AR 19. The ALJ thus concluded that the Sims' daily activities do not comport with Sims' allegations regarding the severity of her symptoms. AR 19. The record supports the ALJ's finding because Sims herself reported that she "exercises frequently," AR 873, vacuums and mops her home, AR 280, and drives herself to the grocery store, AR 281. Sims also

28

8

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   "ensures her minor son is cared for in terms of getting up and getting dressed for school"; she also

2   "prepares his meals" and "washes his clothes." AR 288-89. Furthermore, Sims told a social worker

3   that Sims had been babysitting her nephew for at least 40 hours a week, AR 866, and that Sims was

4   interested in either going back to work or attending school once her nephew started day care, AR

5   860-61. Moreover, Sims' claim that she is unable to engage in normal social functioning is

6   undermined by the fact that she is "close to her family and relatives and enjoys spending time with

7   them." AR 881.

8         Second, the ALJ found that Sims' alleged limitations and subjective complaints were not

9   fully persuasive in light of Sims' medical records and the medical evidence, which was consistent

10   with the ALJ's RFC finding. AR 22. The record supports the ALJ's finding because Sims' past

11   MRIs revealed only a mild shoulder problem in May 2009, AR 448, and a normal lumbar spine,

12   thoracic spine, left clavicle, scapula, and proximal humerus in May 2009, AR 673-76. This

13   undermines Sims' allegations that her shoulder injuries were so severe as to prevent her from

14   sustaining gainful employment or completing activities of daily living. AR 19. In addition,

15   throughout the record, many of Sims' doctors opined that Sims was able to return to work with

16   only minimal limitations, including Dr. Mann, AR 598, and Dr. Sharma, AR 427. Furthermore, Dr.

17   Afroz, a psychiatrist, opined that while Sims suffered from depression, anxiety, hallucinations, and

18   problems interacting in public, Sims' symptoms were in remission and Sims had no more than mild

19   limitations relative to various work-related mental functions. AR 833. Dr. Afroz's opinion

20   undermines Sims' allegations that her depression is severe enough to prevent her from sustaining

21   gainful employment. AR 19.

22         In sum, the ALJ offered "specific, clear and convincing evidence" for discrediting Sims'

23   subjective testimony. *Smolen*, 80 F.3d at 1281. Both the objective medical evidence and Sims' self-

24   reported daily activities do not comport with Sims' allegations as to the severity of her symptoms

25   and her functional limitations.[2] Accordingly, the Court concludes that the ALJ presented specific

26   ───────────────

[2] The ALJ also found Sims not credible because Sims' behavior at the hearing undermined Sims'
27   statements that she was not using drugs. AR 19. The ALJ further noted that Sims failed to submit
   evidence of her sobriety after the hearing despite an opportunity do so. AR 19. The record suggests
28   that clean results of a toxicology test conducted on April 2, 2012 were submitted to the ALJ on

9

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2

and legitimate reasons for finding Sims' subjective complaints unreliable. *See Fair v. Brown*, 885

F.2d 597, 604 (9th Cir. 1989).

3

4

### B.     Conflict between Vocational Expert Testimony and the Dictionary of Occupational Titles

5

6

7

8

9

Sims' second contention is that the ALJ committed legal error by failing to inquire,

identify, and reasonably resolve conflicts between testimony from the vocational expert and the

DOT, which lists the physical requirements of various job titles. Sims argues that the job titles that

the vocational expert testified Sims was capable of holding require manipulative demands in the

DOT that exceed what the ALJ found Sims could do.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

An ALJ may not "rely on a vocational expert's testimony regarding the requirements of a

particular job without first inquiring whether the testimony conflicts with the *Dictionary of*

*Occupational Titles*." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). "SSR 00–4p

unambiguously provides that [w]hen a [vocational expert] . . . provides evidence about the

requirements of a job or occupation, the adjudicator has *an affirmative responsibility* to ask about

any possible conflict between that [vocational expert] . . . evidence and information provided in the

[*Dictionary of Occupational Titles*]." *Id.* (emphasis in original). "SSR 00–4p further provides that

the adjudicator *will* ask the vocational expert if the evidence he or she has provided is consistent

with the *Dictionary of Occupational Titles* and obtain a reasonable explanation for any apparent

conflict." *Id.* at 1152-53 (emphasis in original). However, failing to inquire whether the testimony

conflicts with the DOT is the sort of "procedural error" that may be "harmless" if there is no

conflict between the vocational expert's testimony and the DOT. *Id.* at 1154 n. 19; *see also Fritz v.*

*Comm'r of Soc. Sec. Admin.*, 480 Fed. App'x 886, 887 (9th Cir. 2012)  (holding that the "ALJ's

failure to ask the vocational expert whether the expert's testimony contradicted the *Dictionary of*

24

25

26

27

28

April 20, 2012 through a letter from Sims' counsel. AR 946-47. However, the record also suggests
that the ALJ gave Sims two weeks after the hearing, which took place on March 19, 2012, to
submit any sobriety evidence. AR 144. Accordingly, the ALJ may have disregarded the April 20,
2012 letter attaching the toxicology test results as untimely. The Court does not reach the issue of
whether Sims' behavior at the hearing and subsequent submission or lack of submission of
toxicology test results undermined Sims' credibility because the Court finds that even if Sims had
submitted timely, clean toxicology test results, there is substantial evidence in the record relating to
the objective medical evidence and Sims' self-reported daily activities to undermine Sims'
credibility as to the severity of her symptoms.

10

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

1    *Occupational Titles* was harmless error because Fritz has not shown any contradiction to be

2    present").

3         In this case, the ALJ failed to ask the vocational expert whether the vocational expert's

4    testimony that a person of Sims' age, education, work experience, and RFC could work as an

5    accounting clerk, a general office clerk, and a receptionist conflicted with the DOT. AR 129-30,

6    132, 133-37; *see also Massachi*, 486 F.3d at 1152. However, the ALJ's failure to perform the

7    appropriate inquiry was harmless because Sims has not shown any true conflict between Sims'

8    abilities and the requirements of those job titles in the DOT for the reasons stated below. AR 23;

9    *see also Fritz*, 480 Fed. App'x. at 887.

10        Sims contends that there is a conflict between the vocational expert's testimony and the

11   DOT concerning her ability to perform past relevant work. When asked whether a hypothetical

12   individual with Sims' RFC could perform certain work, the vocational expert testified that such an

13   individual would be able to perform the work of a "receptionist," "accounting clerk," or "general

14   office clerk." AR 136. The ALJ, accepting this testimony, concluded that Sims is capable of

15   preforming her past relevant work as a receptionist, accounting clerk, and general office clerk. AR

16   23. Sims' contention before this Court is that the ALJ erred because the ALJ did not consider

17   whether the DOT description of these jobs was in conflict with the vocational expert's testimony.

18   More specifically, Sims' contention relates to the issue of whether the job requirements of the job

19   titles in the DOT require more "reaching" than what the ALJ found that Sims can do. The DOT

20   description for all three jobs (receptionist, accounting clerk, and general office clerk) provides that

21   a worker must be capable of frequent reaching. *See* DOT §§ 237.367-038, 1991 WL 672192

22   (receptionist), 216.482-010, 1991 WL 671933 (accounting clerk), 209.562-010, 1991 WL 671792

23   (general office clerk). Sims contends that because the ALJ found that Sims is limited to "no more

24   than occasional" overhead reaching with her left arm, the manipulative demands of each job listed

25   by the vocational expert go beyond Sims' limitations and thus the vocational expert's testimony

26   contradicted the DOT. AR 18.

27

28

11

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

*(left margin)* **United States District Court** / For the Northern District of California

**United States District Court**
For the Northern District of California

1    However, the job duties of the three jobs do not require reaching with *both* arms. *See* DOT

2    §§ 237.367-038, 1991 WL 672192 (receptionist), 216.482-010, 1991 WL 671933 (accounting

3    clerk), 209.562-010, 1991 WL 671792 (general office clerk). Rather, frequent reaching with one

4    arm is sufficient to complete the job duties of a receptionist, accounting clerk, or general office

5    clerk, as described by the DOT. In *Kroeker v. Callahan*, the Ninth Circuit found that a vocational

6    expert's testimony that a claimant who had limited left arm mobility could perform work defined

7    by the DOT as requiring "frequent reaching" did not contradict the DOT. No. 96-15835, 127 F.3d

8    1105, at *2 (9th Cir. Oct. 16, 1997) ("While the DOT further classifies each job as requiring

9    frequent reaching and handling, substantial evidence supports the conclusion that Kroeker's

10   dominant right hand was fully functional. Thus, the expert's testimony that Kroeker could perform

11   the jobs of laundry worker and escort-vehicle driver did not contradict the DOT, and his testimony

12   constituted substantial evidence to support the denial of benefits."). The Fifth Circuit and other

13   district courts in this Circuit are in accord. *See Carey v. Apfel,* 230 F.3d 131, 146 (5th Cir. 2000)

14   (holding that a vocational expert's testimony that a claimant whose left arm had been amputated

15   could perform work requiring occasional or frequent handling and fingering was not inconsistent

16   with DOT); *Gutierrez v. Astrue*, No. 10-9690, 2012 WL 234366, at *2 (C.D. Cal. Jan. 24, 2012)

17   ("[G]enerally speaking, the requirement that an employee frequently use his hands to perform a job

18   does not mean that he has to be able to use both hands"); *McConnell v. Astrue*, No. 08-667, 2010

19   WL 1946728, at *7 (C.D. Cal. May 10, 2010) ("While the two challenged jobs do require, *inter*

20   *alia*, frequent or occasional reaching, handling and/or fingering, plaintiff has no significant

21   limitations in the use of his left arm and hand, and thus would be capable of performing such

22   requirements."); *Feibusch v. Astrue*, No. 07-244, 2008 WL 583554, at *5 (D. Haw. Mar. 4, 2008)

23   (noting that "the use of two arms is not necessarily required for jobs that require reaching and

24   handling"); *see also Diehl v. Barnhart,* 357 F. Supp. 2d 804, 822 (E.D. Pa. 2005) (finding that a

25   vocational expert's testimony that a claimant with limited use of one arm could perform jobs

26   requiring frequent reaching, handling, and fingering was not inconsistent with DOT).[3]

---

27   [3] Sims cites to the Seventh Circuit case, *Prochaska v. Barnhart*, 454 F.3d 731 (7th Cir. 2006), to
28   support her argument that her preclusion from overhead reaching with one arm is inconsistent with

12

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    In the instant case, the vocational expert's testimony was not inconsistent with the DOT

2  because Sims had full functioning of her right arm. Accordingly, the ALJ's error in failing to ask

3  the vocational expert whether the vocational expert's testimony conflicted with the DOT was

4  harmless. *See Fritz*, 480 Fed. App'x. at 887. Therefore, despite the ALJ's failure to ask whether the

5  vocational expert's testimony conflicted with the DOT, the ALJ properly relied on the vocational

6  expert's testimony in determining that Sims could perform the occupations of receptionist,

7  accounting clerk, and general office clerk. AR 23; *see also Massachi,* 486 F.3d at 1152-53.

8  **IV.    ORDER**

9    For the foregoing reasons, IT IS ORDERED THAT:

10   1.    Plaintiff's motion for summary judgment is DENIED;

11   2.    Defendant's motion for summary judgment is GRANTED; and

12   3.    The Clerk shall close the file.

13

14  Dated: July 7, 2014                                          _Lucy H. Koh_____

15                                                               LUCY H. KOH
                                                                 United States District Judge

16

17

18

19

20

21

22

23

24  _____

25  a job description in the DOT that requires frequent reaching. *Prochaska* is inapposite. The
    inconsistency in that case was that claimant could not reach above her shoulders, but the DOT job
    description required frequent reaching. Accordingly, the Seventh Circuit concluded that "[i]t is not

26  clear to us whether the DOT's requirements include reaching above shoulder level, and this is
    exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Id.* at 736.

27  In contrast, here, the question is whether reaching requires use of *both* arms, and that question has
    been conclusively resolved by case law.

28                                                13

Case No.: 13-CV-01755-LHK
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT